JAMES H. MARSH, petitioner-appellant,

*v.*

HELEN BENNETT MARSH, defendant-respondent.

[Argued June 23d, 1916. Decided November 20th, 1916.]

1. The evidence in this case is sufficient to show a *bona fide* residence in this state by the petitioner.

2. A husband, in a suit for desertion by his wife, is not bound to attempt to induce her to return, when it is clear, that any effort in that direction by the husband will be unavailing to terminate the desertion; the duty of making advances and concessions on his part does not then exist.

On appeal from the court of chancery.

*Mr. Charles M. Mason,* for the petitioner-appellant.

*Messrs. McCarter & English,* for the defendant-respondent.

The opinion of the court was delivered by

BLACK, J.

The petition in this case was filed, seeking to have the marriage between the appellant and respondent dissolved on the ground, that the respondent willfully, continuously and obstinately deserted the appellant, for more than two years before the filing of the petition. The petition was filed on May 18th, 1914. A decree of dismissal was entered in the court of chancery, as advised by the learned advisory master, before whom the case was tried. Hence this appeal on the part of the appellant, the husband. The master, in the conclusion filed by him, based his refusal to advise a decree of divorce on the ground, that the husband never made any honest and sincere effort to secure the wife's return to him, and that it was not shown, that if such effort on his part had been made it would not have been accepted by the defendant. The learned advisory master applied the rule, that it was incumbent upon the husband to endeavor to secure his wife's return to him; the duty was upon him to make the advances, looking to reconciliation, unless such an effort would be evidently useless, the desertion of the wife having been established. We do not agree with the view taken by the learned advisory master of the facts of this case. We think a decree of divorce should have been entered in favor of the appellant, the husband, on the facts as disclosed by the record. The case is peculiarly one of fact. It will be necessary for us, therefore, to briefly review the facts showing the basis on which we rest our conclusion. First, as to residence. The parties were married

the first time on April 10th, 1900, by a justice of the peace, in Paterson, New Jersey. Subsequently, for some unexplained reason, they were remarried (just why it does not appear) on March 1st, 1912, by a minister in Jersey City. They were both counselors-at-law of the State of New York. They subsequently lived in New York City. They lived for four years at Long Branch, New Jersey. On or about March 19th, 1912, the appellant went to Newark and arranged with a Mrs. Rothenberg, at No. 687 Ridge street, Newark, for rooms, which he occupied from March, 1912, to April, 1914. Then he moved to Hoboken, at Mrs. Klug's, first at No. 722 Bloomfield street and then, at No. 215 Tenth street. The petitioner tried to get his wife and child to live with him at the Newark residence. Shortly after the appellant went to Newark, the respondent went to Kentucky and there began the practice of law. She remained there until her return to New York in June, 1914, when she was served with papers in this action. The record also shows the appellant voted in Newark, at the election in 1913. He also voted at another time in Hoboken. The evidence further shows he tried to get his wife to come to New Jersey to live with him. The petitioner was married in New Jersey; he was living in New Jersey at the time the wife went to Kentucky; he was living in New Jersey at the time of the filing of the petition, and was living in New Jersey at the time of the hearing before the advisory master, nearly four years after the wife went to live and practice law in Kentucky. Meanwhile, he voted both in Newark and Hoboken. This evidence is plenary of the fact of residence and of the *animus manendi,* which proves the domicile. *Wallace* v. *Wallace, 65 N. J. Eq. 359; 54 Atl. Rep. 433.* Second, the next and only other point in the case is what advances or concessions, if any, the law exacted from the husband to the wife to induce her to return. The rule of law applied to that class of cases where the wife's desertion is induced, though not justified by his conduct to her, is stated in the case of *Bowlby* v. *Bowlby, 25 N. J. Eq. 406; affirmed, Ibid. 570,* and restated in the case of *Van Wart* v. *Van Wart, 57 N. J. Eq. 598.* The rule is, the husband is bound to do those things which might reasonably be expected to remove the trouble and induce the wife to return.

This court, in the case of *Hall* v. *Hall, 60 N. J. Eq. 470,* formulated the rule on the subject and said: "But the law does not impose this duty upon the husband in every case arbitrarily and without regard to the facts and circumstances by which it is surrounded. The husband is bound to make such advances and concessions only where there is reasonable ground to suppose that such action on his part will terminate the wife's desertion. Where it is manifest, from the circumstances under which the desertion took place, or from her temper or disposition, or from any other fact in the case, that honest effort on the husband's part to terminate the separation would be unavailing; or, if successful in bringing the desertion to an end, would be so only temporarily, the duty of making it does not exist." Citing *Trall* v. *Trall, 32 N. J. Eq. 231; Lammertz* v. *Lammertz, 59 N. J. Eq. 649.* It would serve no useful purpose, to state the evidence in detail, showing the wife's attitude toward her husband. It is sufficient, by way of illustration, to refer to a passage from one of the wife's letters, known as the "Hound of Hell" letter *(Exhibit P 3),* which reveals the attitude of her mind and the promptings of her heart toward her husband. It demonstrates, to our satisfaction, the utter futility of any attempted reconciliation by him.

In view of this letter, which is in accord with much of the testimony in the case, on this point under discussion, any attempted reconciliation on the part of the husband, it seems to us, would have been a meaningless formality. In this case no such duty existed on the part of the husband. In cases of this kind the law exacts no such formality.

We think the decree of the court of chancery should be reversed and the case remitted to that court, to enter a decree of divorce in favor of the appellant and against the respondent, in accordance with the views expressed in this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, TAYLOR, GARDNER—13.